Thank you. May it please the Court, Counsel Charles Rabinowitz for the claimant Michael Robirds. I would like to reserve three minutes for rebuttal, if I may, and Ms. Liao would like six minutes of my other 12 minutes, which I've agreed to a lot to her. So I'm actually left with six minutes for an I've been able to identify. The first is what is the accrual date for interest for compensation under section 14a of the Longshore and Harbor Workers Compensation Act? Is it when the 14e compensation is owed, which is at the same time as the underlying disability compensation is owed, based on the language, the clear language of the statute, or is it when the AOJ finally issues a decision in order, which, as in this case, can be years later? There are two points I just want to make on the accrual date of interest. Number one is that it is undisputed that section 14a benefits are compensation and not a penalty under the statute. The Benefits Review Board held it was compensation, and the carrier did not cross-appeal that issue. And even if it had cross-appealed it, it would have a very, very steep uphill battle based on this court's opinion in Tahara v. Mattson Terminals, which held that benefits under section 14f, a companion statute, are compensation and not a penalty. The other thing I want to make a point of on this is that all of the case law that I'm aware of under the Longshore and Harbor Workers Compensation Act bears interest from the date the compensation is due. In other words, pre-judgment interest. And this court has actually been a leader in assessing interest on past due compensation, both on temporary disability benefits, section 14f benefits, medical benefits, as well as permanent disability. Otherwise, I'm going to leave that issue to Ms. Liao to answer. The carrier, the insurance carrier in this case, inadvertently overpaid Mr. Roberts' compensation following the AOJ's decision. And the compensation they overpaid, I think it's four days of compensation, exceeds the amount of interest that Mr. Roberts would be entitled to if he prevails on this case. And it argues that therefore he's not going to get anything. The issue is moot. And a couple of arguments on that. Number one, he is going to get something because he still has modification rights under section 22 of the Longshore Act. And the credit, the reducing the credit would give him further opportunity for benefits under that. Secondly, the carrier says, well, we're going to waive the credit, any overpayment credit on disability benefits, so he's really going to get nothing. And I don't think a party is allowed to do that under the Act. It is a form of gainsmanship. The Supreme Court said that no court should interpret the statute to allow one party or the other to be able to manipulate benefits and affect the law. Let me ask you here, why is this an instance of gainsmanship? Because as I recall, the record, and you can correct me if I'm wrong, is that the employer asserted the overpayment after the appeal was filed, but before the briefing was underway. Is that right? That's correct. They did assert that before the Benefits Review Board. Before, before the briefs to the board were filed. I believe you're correct. So why, why does that demonstrate gainsmanship? But what they were trying to do is get the appeal dismissed and not have the board even consider the issue of whether Cox was wrong, was wrongly decided. Well, but they couldn't really get the appeal dismissed because he had another issue he was appealing. Correct. I did have another issue. Correct. It was another issue that was in play. So the appeal was going to go forward. Correct. So people involved the overpayment, whether those. So why is this an instance of gainsmanship? Well, they're certainly trying to manipulate things before this court. They won essentially in one sense, they won before the Benefits Review Board because the board did not assess any prejudgment interest on Section 14 E compensation. The other argument is that in the Fourth Circuit addressed this in the Moody case. The, in Moody, a legal issue was involved in the case as to whether a retired longshoreman could begin receiving benefits after his retirement. And the Benefits Review Board had held that the longshoreman or shipyard worker can't. The, after oral argument, and I think the appeal involved $15,000 or $20,000 in benefits, after the oral argument apparently didn't go very well for the insurance carrier, the insurance carrier paid the benefits to Mr. Moody and argued that the appeal was moot. And the Fourth Circuit held it's not moot because the Benefits Review Board got it wrong and they're going to continue to get it wrong and the issue is going to recur. Isn't that a little bit different than what happened here? I don't think so. The, I think the same thing. Here they inadvertently paid the benefits. They didn't intend to pay the benefits. They inadvertently overpaid Mr. Roberts. And therefore, the, but they're still arguing he's not, he's not going to get anything and therefore. Let me ask you, let me ask you to take this from a different angle. Can they insure, just by saying I'm going to, we'll waive any right to apply this overpayment to any possible future benefits. Can they just force an employee to accept that? I mean, there was no stipulation here, right? There's no stipulation, correct. They just said we waive any claim to future benefits, to future application of this overpayment. I don't think they can if the employee doesn't want to go along with it and if the Department of Labor doesn't agree to it. The Department of Labor, the other issue, and why the issue is not moved, is the, the director has a role in administering the act and making sure that the courts correctly interpret it. And the director has argued in this case that the accrual issue was incorrectly interpreted by the benefits review board. And they have a role here. Is there anything in the regulations or in board case law that says that the board, in an instance like this, that the board or the director has to approve a waiver? I think the, I don't think there's anything specific, but I think the director has a role in administering the act. And if the director doesn't think it's correctly interpreted, I think the director has the standing to object to it and to argue that the court should interpret it differently. Okay, you're, you're, you're, you wanted, you're calling. Can I, Judge Pius, can I just ask one follow up question on the, on the, I want to understand your position. Let's say that instead of this overpayment having occurred, back when you and the other lawyer had the exchange before the appeal really got off the ground, the employer says, listen, this, we're talking about $800, you know, if, we'll just write you a check for that amount. And they did so, and they sent it to your client. I assume you would agree there that the case would be moot if that were the only issue in play or not. I think the director could probably intervene and say, we want to go ahead with this. And I think based on the, the case in the Fourth Circuit, the Huntington-Engels case, I think that the court could still make a decision on it. The, and I think the, I think the claimant could say, I'll accept, could reject the payment and say, I want to go ahead with the appeal. I think the issue's important. Okay. I think your colleague is going to. I agree, I'll pass to her. Thank you. Good morning, and may it please the court. My name is Cynthia Liao, and I represent the director of the Office of Workers' Compensation Programs, the Department of Labor. As was discussed, Mr. Roberts was owed compensation under 914E back in the 2012-2013 prime time period, but it took until 2017 for the ALJ to recognize that fact. And this court has repeatedly held that when compensation is overdue, interest accrues on a pre-judgment basis. But for whatever reason, the board completely ignored this court's precedent and decided to award only post-judgment interest. And this court should reverse that portion of the board's decision and remand for the agency to calculate pre-judgment interest. As was mentioned, the employer doesn't actually contest that 914E payments are compensation. They only contest the pre- versus post-judgment issue. But their arguments aren't persuasive. If the employer is confused about how much compensation is due, the solution is to controvert the claim in a timely fashion. It's not to leave the claimant hanging by neither paying nor controverting, which is what happened here. When that happens, then the claimant is owed 914E compensation and pre-judgment interest is due. The Third Circuit case that employer cites, Barry, has really no bearing on this case on the pre-judgment issue because in that case, the employer's argument was that no interest was due whatsoever under the act, and the court rejected it. There was no litigation about the pre- versus post-judgment concept. And also, 914E is very similar to 914F, and the board has awarded pre-judgment interest on 914F payments since the 70s in McKamey. And given how similar those two provisions are, there's no reason why this court should deviate from that. This court should just award pre-judgment interest. Does the director have a position on mootness? Well, Your Honor, we didn't brief that issue, so I didn't want to step out of bounds here. I'm just curious if you... Yeah, no, the director takes no position. Let me ask you this. Counsel just argued that the director could effectively disagree that a case was moot, like here, said that the director before the board said it was moot. Can the director, does the director have that authority? Is there a case that talks about the director's role in this kind of situation? Well, so the claimant cites the Ingalls Shipbuilding case, the Supreme Court, and we don't think that here's any mootness problem here, because in that case, the issue is whether the director is allowed to participate as a respondent in the Court of Appeals when the director doesn't have an interest beyond being an administrator of the statute and having interest generally in how the statute is interpreted. In those kinds of cases, if the claimant and the employer have a controversy between them, then the director has standing under the federal rules of the appellate procedure to be the agency respondent. Our standing flows from the controversy between the parties. If there's no controversy to begin with, then we wouldn't have standing to be here. So that line of cases doesn't really help in this case. Okay. Thank you. Let's hear from the insurance. All right. Thank you. Thank you, Your Honor. May it please the Court, my name is James Babcock, and I represent ICTSI Oregon and Signal Mutual Indemnity Association in this appeal. As we've already talked about, there are two principal issues here. First, whether the Benefits Review Board erred in awarding interest on a 914E payment on a post-judgment basis rather than a pre-judgment basis. And second, whether this issue was moot and the claimant had standing to pursue his appeal before both the Board and the 9th Circuit. Now, beginning with interest, the parties are correct that the Board decided to reverse costs and allow interest in a general matter on 914E payments because those payments should be treated as compensation and there's precedent that interest is allowable on compensation. That specific holding was not appealed. The Board then acted within its discretion and held that 914E interest should be treated differently and that it should be awarded on a post-judgment basis. They did provide a reason for this. Their reasoning was that the purpose of post-judgment interest is to compensate for the deprivation of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant. Focusing on the ascertainment of the damage makes the most sense with Section 914E, particularly when you compare it with Section 914F. Now, 914E allows an additional 10% payment for periods where two factors are met. First, where it's clear that compensation is owed and second, where the employer did not timely controvert the entitlement to compensation within 14 days. Now, the key component there is that compensation is owed. That's not going to be immediately clear in many cases where a controversy has been issued. Indeed, that's the reason for a controversy. It's a notice that there's a dispute as to whether compensation is owed. In a sense, 914E payments are unique in that they will always be disputed. It will never be certain at the time whether or not compensation is owed. Counsel, I think your argument would have force if you didn't have the option to controvert the claim and cut off any 914E liability. The presence of that, it seems to me, completely undermines the force of your argument because you're right. It's different from a 914F award in that there's not a dollar amount written on a piece of paper that you're commanded to pay. That's really easy. In the 914E context, I get what you're saying. There's all sorts of disputes that could arise. But all you have to do if you're the employer to cut off your 914E liability is just to controvert it. So I guess I really don't understand how your argument can carry past that particular barrier. We would contend, Your Honor, that 914E, there is an additional payment for failing to make that controversion. So there is already a built-in penalty for it. I'm trying to be very careful with my use of penalty versus compensation. It's difficult at times. But there is this built-in payment, and the Board decided that based on the uncertainty present with 914E payments, that the interest on top of that payment didn't need to be computed on a prejudgment basis. And we would contend that that makes sense in light of 914E compared to 914F where, as you stated, a 914F payment is immediately certain. You'll have a compensation order in front of you saying you owe this amount of money. Ten days pass, you don't pay it, it's 20% of that amount. It's immediately clear, and we contend that that provides a basis for treating 914E differently from 914F. But, okay, just sorry to repeat this, but in a 914E context, very often it will be just as clear how much money is owed, right? I'm not an expert in this area like you presumably are, but as I understand it, a lot of times there's just not going to be a whole lot to fight about. Yes, you could have disagreements as to the percentage of disability or whatnot, but there's a schedule that sets out how much the person's supposed to pay, and it's based on what their prior wages were. So in the vast majority of cases, it seems as though, actually, pretty much both sides are going to agree on this is what's owed. But in those cases where there is room for disagreement, that's what I say, then it's not as though the employer is just left to... Okay, well, it's uncertain, so what am I supposed to do? Stop and get the money back? I apologize, Your Honor. I apologize. Your feed cut out halfway through. Yeah, I've been having issues with my internet. Go ahead. Go ahead, Judge Watford, and maybe just capture that point again. No, I was just repeating the point before, really. I guess I'm just still not moved by your argument that somehow, because it's uncertain, you can't say that the amount was immediately payable. It presumably was certain enough because if there were a dispute, you would have controverted it. At that point, it's certain that there was a dispute, but the dispute necessarily means that the amount of compensation on which a penalty could be subject or a 914E payment is unknown. Does that respond to your question, or am I missing the issue? No, you've responded as best you can, I think. Before you move on to the next point, let me just ask you a question. You started out by saying that the Board properly exercised its discretion to apply it post-judgment or post-decision. This is really a legal issue, correct? It is a legal issue. Did they correctly interpret 14F? Do you mean 14E? I'm sorry. Is it our contention that they did correctly interpret 14E, and it was a novel... If there was some discretion here, that would suggest that, well, in some cases, a person could get interest on the award, and in other cases, not. But that doesn't sound quite correct. It's a legal question that we have to resolve. It is a legal question. The Board, by reversing Cox, they generated a new question, which is, if interest is due on section 914E, how do we calculate it? And the Board then reached a legal decision about how to calculate it. It's our contention that that was appropriate under the circumstances. Did you want to address mootness? Absolutely. So, for mootness, my client made an overpayment in this case, and this is all documented in our supplemental excerpts of record. Approximately $885 that exceeded the amount at issue. We contacted the Office of Workers' Compensation Programs, had them run an interest calculation on a pre-judgment basis, and then we also calculated the amount due if Mr. Roberts succeeded in his argument that he was entitled to three additional days of permanent and total disability compensation. The sum of those figures was $746.05. Mr. Rabinowitz actually appealed the PTD question to the Board, and that argument failed at the Board, so the amount at issue now is actually less. It's $143.33. We identified an overpayment. We determined that the amount that was going to be subject to appeal was less than that overpayment, and we contacted Mr. Rabinowitz after the matter had been appealed to the Board, but before any briefing had been completed, and notified him that we were unequivocally waiving that overpayment, and that there was therefore no financial amount at issue, and Mr. Roberts has had no financial stake in this claim since 2017. Nonetheless, he's chosen to appeal the matter all the way up to the Ninth Circuit, and the reason for this appeal was stated in the supplemental excerpt of record as a desire for the Board to revisit the issue of denying interest on Section 914E payments. Now, this is inappropriate. It falls squarely within the Second Circuit's decision in Macaulay, where the Court of Appeals held that it was improper to pursue litigation solely because it may benefit others. Mr. Roberts himself has had no interest in the outcome of the appeal since September of 2017. So, there's simply been no stake in it, and the claim itself is moot. Now, in some pleadings and arguments, there's been a reference to a need for a formal compensation order addressing the waiver. This is incorrect. There's no precedent establishing the requirement for a formal compensation order, and frankly, it directly contradicts the Supreme Court's statements in Roberts. In Roberts, the Supreme Court made it clear that voluntary resolution of claims under the Act was favorable. They specifically stated, undersettled LHWCA practice orders are rare. Roberts' interpretation would set needless administrative machinery in motion and would disrupt the congressionally preferred system of voluntary compensation and informal dispute resolution. Mandating that any voluntary payment from the employer or any voluntary waiver be accompanied by a formal compensation order would generate needless litigation and unnecessarily complicated issues, and it would discourage voluntary and informal resolution of issues, which is precisely the opposite of what the Supreme Court was seeking in Roberts. Finally, the board  was moot, cited three cases. None of them are applicable. Moody Moody is clearly distinct. Moody dealt with a situation where the employer asserted a position to the board, generated favorable precedent, briefed that issue at the Fourth Circuit, went to oral argument, presumably saw that the outcome was not going to be what they liked, and made a voluntary payment and a motion to dismiss in order to avoid appellate review. That's not the case here. ICTSI made its overpayment and waiver before any briefing had been completed, before appellate procedures were underway. The other case cited was Payne. Payne is inapplicable as well. It dealt with specific recurring conduct and a policy or practice by the defendant. That's not present here. There isn't a long chain of cases where my client has attempted to avoid 914E interests on a prejudgment basis. And finally, O'Berry itself, that was the line of cases referencing the director's standing to appear, and as the director just conceded, their standing is contingent on claimants. So the mere fact that they may have standing, it is irrelevant if the claimant himself does not. Mr. Babcock, Mr. Rabinowitz referenced modification rights and the future opportunity for benefits. Does that affect Mr. Roberts in any particular way? Not in this instance, Your Honor. Mr. Roberts could seek modification if his knee condition worsens. Under that scenario, if our overpayment had not been waived, perhaps that could have been applied to it, but since the waiver has been completed, it cannot. He could theoretically attempt to modify on this legal issue, but that would be impermissible because the Court of Appeals would not seek modification purely on a legal issue. So would it have to be a new claim at that point in time? Well, the legal issue itself will be disposed of at this level. There's no further options there. All right. Let me ask you again. If we were to agree with you that this issue is new, what's the remedy? The Board's decision should be reversed as well, Your Honor. Well, the Board's decision reached another issue as well. Well, a precursor to the Board's decision on 914E was whether or not the claim was moot. So a finding that the claim was moot would also defeat their decision on that issue. One last thing. This case, it's been a... Let me see if I make sure I understand. Are you saying that we would tell the Board to vacate its decision or just grant a petition and remand to the Board? I believe you'd be telling the Board to vacate its decision as well. One last doctrine that has been raised sometimes in the briefing is whether or not this case is capable of repetition yet evading review. And that's not the case here. The Ninth Circuit has laid out the standards there fairly clearly in sample. And it's not enough that an issue be capable of repetition generally. It has to be capable of repetition as to the parties. The odds of Mr. Roberts entering into a subsequent dispute with ICTSI, a company that is actually no longer operating in Portland, Oregon, regarding interest on a 914E payment are infinitesimally small. Sample requires a reasonable showing of a sufficient likelihood that the injury will recur. That's not the case here. And it's also on the plaintiff to show the likelihood of recurrence. They bear that burden, and they can't prove it with mere subjective showing or speculation. There's no precedent for bidding the employer's waiver, and the claimant was aware of that waiver going back to 2017, and nonetheless chose to appeal in a case where there was no financial stake in the outcome. Mr. Roberts' appeal to both the Board and the Ninth Circuit are moot, and the Board's decision should be reversed. Thank you, Your Honors. Counselor to Mr. Roberts. You're muted. There you go.  Thank you, Your Honors. First of all, 914E compensation is no different than any other compensation such as disability. You don't know. The courts have held that this interest on disability benefits are always prejudgment, and it's no different. They're uncertain as well until the AOJ makes a decision. So there's really no difference between the certainty of the benefits is the same as any other disability benefits under the Act. The issue of the mootness, there's no question that the Board is going to continue to adhere to its decision on the accrual date of interest under section 914E. This is going to recur continually until this issue is resolved. The issue has been briefed before this Court, and this Court certainly has not only the ability but the right to decide this issue and resolve it. Anytime a party through a voluntary compliance suggests mooting a case, they have a formidable burden to show that it's absolutely clear the allegedly wrongful behavior could not be expected to recur, and that was the reason that the Fourth Circuit decided the mooting case and held that the issue was not moot. And this is going to be a recurring theme. The other thing I could suggest is if this issue of the accrual date of interest was not briefed to the Board, I think both parties assumed that if the Board held that interest applied, it would apply from the time that the 14E compensation was due, as a post-judgment issue. And the Board just came up with this decision on their own. I asked for reconsideration, and the employer, if they wanted to resolve this case, could have joined in and said that the Board got it wrong and it should modify its decision. If they wanted to settle, we could have resolved this easily before the Board and the issue would not reoccur and it would never have gotten to this Court. I don't think sample is on point at all. Sample involved a unique question that involved Mr. Sample only and it did not involve a situation that was likely to recur to anybody, and the Director was not involved in that case. I don't have anything further to add, unless the Court has questions. Thank you. I don't see anything. Thank you, Counsel. We appreciate your arguments this morning. The case is submitted at this time. Thank you. Can we take a two-minute break, Judge Paz? Yes, we can. The Court will be in a break for two minutes. Thank you.
judges: Paez, Watford, Tunheim